UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Azure Manor/Rancho de Paz Homeowners Association,<br><br>    Plaintiff<br><br>v.<br><br>U.S. Home Corporation, et al.,<br><br>    Defendants | 2:15-cv-00002-JAD-CWH<br><br>**Order Granting in Part and Denying in Part U.S. Home's Motion for Partial Summary Judgment**<br><br>[ECF 30] |

    The Azure Manor/Rancho de Paz Homeowners Association sues U.S. Home Corporation, Lennar Corporation, and Lennar Sales Corporation (collectively "U.S. Home") under various legal theories alleging that the ninety-eight U.S. Home-built residences in the Rancho de Paz community in North Las Vegas, Nevada, were defectively constructed.[1]  The Association's claims are governed by NRS Chapter 40, which contains Nevada's substantive law for actions resulting from construction defects in new residences.  I stayed this case pending the parties' completion of the Chapter 40 pre-litigation process,[2] but without prejudice to any party challenging the sufficiency of the Association's Chapter 40 notice of defects.[3]

    U.S. Home moves for partial summary judgment in an effort to limit this case to just five homes—the five that were identified in the Association's original Chapter 40 notice.[4]  It asks me to disregard three supplements to that notice that the Association hopes will broaden the reach of this litigation to the other ninety-three homes in this development.  The ultimate scope of this case turns on the categorization of the supplements and sufficiency of all the notices.

---

[1] ECF 1-2.

[2] ECF 29.

[3] *Id*.

[4] ECF 30.

I find that these supplements are true supplements, not new notices. And I conclude that, collectively, these notices satisfy the Nevada Supreme Court's reasonable-threshold test established in *D.R. Horton, Inc. v. Eighth Judicial District Court* ("*First Light I*")[5] to evaluate the sufficiency of Chapter 40 notices and thus trigger U.S. Home's statutory obligations for some but not all of the defects. I thus grant in part and deny in part U.S. Home's motion for summary judgment: the Association may only pursue claims on behalf of the owners of all ninety-eight Rancho de Paz homes with respect to eighty of the defects identified in Thom Sanders's expert reports, and on behalf of the owners of the five original homes for those eighty defects plus all defects identified in the expert reports of the Gifford Consulting Group, Harvey Kreitenberg, and American Geotechnical, Inc. ("AGI").

**Background**

**A.    The Rancho de Paz community**

The Azure Manor/Rancho de Paz single-family-home community "was developed both by U.S. Home . . . and D.R. Horton"[6]; there are 98 homes in the Rancho de Paz portion of the community, and they were all "designed, developed, marketed, and sold" by U.S. Home.[7] "U.S. Home built 5 different floor plans in . . . [Rancho de Paz], and two to three different elevations for each floor plan, for a total of 14 different floor plan/elevation combination options."[8]

**B.    The Chapter 40 process**

Chapter 40 provides a comprehensive pre-litigation process that must be completed before filing a construction-defect lawsuit.[9] That process begins with the tender of a notice of defects to the responsible contractor, commonly known as a "Chapter 40 notice," that must

---

[5] *D.R. Horton v. Eighth Jud. Dist. Ct.*, 168 P.3d 731 (Nev. 2007) ("*First Light I*").

[6] ECF 5-1 at 3, ¶ 5. The parties agree that U.S. Home developed the Rancho de Paz portion of the community, while the Azure Manor portion was developed by D.R. Horton, Inc.

[7] ECF 7-1 at 3, ¶ 5.

[8] *Id.* at ¶ 6.

[9] *See* NEV. REV. STAT. § 40.600 et seq.

"[s]pecify in reasonable detail the defects" in "each residence . . . that is the subject of the claim" and include an expert opinion concerning the cause of the constructional defects" and their extent.[10] A proper Chapter 40 notice triggers the contractor's obligations to respond, inspect, and potentially repair the defects.[11]

### C. The Association's original Chapter 40 notice

On November 21, 2014, the Association served U.S. Home with its original Chapter 40 notice of defects "for all single family homes located" in the community with expert reports from Thom Sanders, Gifford, and Kreitenberg identifying defects in five of the Rancho de Paz homes.[12] The Association sued U.S. Home in state court five days later, alleging construction defects on behalf of all 98 of the homes in the community.[13] U.S. Home removed the action to federal court,[14] and I ultimately stayed it pending the parties' completing the Chapter 40 process for the first five homes, but without prejudice to any party challenging the sufficiency of the notice.[15]

### D. The supplemental notices

In the time between the removal and the stay, the Association served U.S. Home with three supplements to its notice. The first supplement was served on March 3, 2015, and contained the expert report of AGI's inspection of the same five homes.[16] The second supplement was served on March 18, 2015, and contained expert reports from Sanders detailing

---

[10] Nev. Rev. Stat. § 40.645.

[11] Nev. Rev. Stat. §§ 40.6452, 40.6472, 40.648.

[12] ECF 30-3 at 3.

[13] ECF 1-2 at 2.

[14] ECF 1.

[15] ECF 29.

[16] ECF 30-5 at 2–68.

3

defects in an additional 41 homes in the community.[17] And the third supplement was served on April 17, 2015, and contained Sanders's report of defects in eight more homes.

## Discussion

U.S. Home moves for partial summary judgment on the sufficiency of the Association's notices, arguing that the scope of this case should be limited to the five homes and defects identified in the original Chapter 40 notice.[18] To reach this conclusion, U.S. Home asks me to disregard all three supplements because (1) Chapter 40 does not allow claimants to supplement their notice, and (2) even if supplements are permitted, these aren't supplements at all but rather new notices; and (3) the Association may not pursue claims over these newly identified defects because it served these supplements after the effective date of Nevada Assembly Bill No. 125, which amended Chapter 40 and NRS 116.3102(1)(d) to prohibit community associations from pursuing construction-defect claims and pre-litigation procedures on behalf of their homeowners.

**A.     The Association's supplements are true supplements, not new Chapter 40 notices.**

Neither party truly articulates an argument either for or against whether claimants can supplement their notices under Chapter 40. The statutory scheme does prescribe when a notice must be served: "before a claimant commences an action or amends a complaint to add a cause of action for a constructional defect. . . ."[19] But I find that we are beyond the first situation when notice must be given because the Association has already served a notice and commenced litigation, and the Association's supplements do not fit the second situation because they do not require it to amend its complaint to add a cause of action for a constructional defect.

Amending a complaint to add a cause of action for a constructional defect is defined in Chapter 40 to mean "any act by which a claimant seeks to:" (1) "[a]dd to the pleadings a defective component that is not otherwise included in the pleadings **and** for which a notice was not previously given; or" (2) "[a]mend the pleadings in such a manner that the practical effect is

---

[17] ECF 30-6 at 2–30-8 at 102.

[18] ECF 30.

[19] NEV. REV. STAT. § 40.645(1) (this language was not amended by AB 125).

4

the addition of a constructional defect that is not otherwise included in the pleadings."[20] The Association's supplements do not fit either meaning of this term because all of the defects in its supplements are already alleged in its complaint, including the defects identified in the first supplement that U.S. Home claims are new.[21] For the Association's supplements to qualify as notices, they would have to pertain to defects that were not "otherwise included in the pleadings **and** for which a notice was not previously given. . . ."[22]

But we only have one part of that equation here: for which notice was not previously given.[23] Because the Association would not be required to issue its supplements as stand-alone notices under the plain language of Chapter 40, and neither party advances an actual argument regarding the propriety of supplementing notices under Chapter 40, I find, without deciding whether supplements are proper under the statutory scheme, that the Association's supplements are in fact supplements and not new notices. I thus exercise my discretion and consider the supplements along with the original notice when considering the sufficiency of the Association's notices under Chapter 40.

---

[20] *Id.* at § 40.603 (emphasis added) (this language was not amended by AB 125).

[21] *Compare* ECF 1-2 at 7, ¶ 22 (alleging as "roofs[;] **foundation**; structural issues; window systems; sliding glass doors; electrical systems, plumbing systems; mechanical systems; stucco; **concrete flatwork**; HVAC systems[;] drywall[;] exterior and interior trim[;] baseboards[;] sinks[;] windows[;] trusses[;] cross-bracing[;] and **retaining walls**") (emphasis added) *with* ECF 30-3 at 2–ECF 30-9 at 108.

[22] *See* NEV. REV. STAT. § 40.603 (emphasis added).

[23] Even if I found that the Association's first supplement was a notice rather than a supplement, I still would not find that it was prohibited under AB 125's amendments to Chapter 40. The act clearly provides that "[t]he provisions of NRS 116.3102, as amended by section 20 of this act, do not apply if a unit-owners' association has given notice of a constructional defect pursuant to NSR 40.600 to 40.695, inclusive, and sections 2 and 3 of this action on or before the effective date of this act." No party disputes that the Association gave "notice of a constructional defect" "before the effective date" of AB 125. The amendments to NRS § 116.3102 thus do not apply on the facts of this case under the plain language of the act.

B.  **The Association's notice on behalf of all similarly situated homeowners satisfies the *First Light I* reasonable-threshold test for some—but not all—of the defects identified by its experts.**

Chapter 40 "pre-litigation notices are presumed valid under NRS 40.645."[24] "A contractor who wishes to challenge the adequacy of a pre-litigation notice bears the burden of doing so with specificity."[25] "Because each case is factually distinct, the district courts have wide discretion to consider each contractor's challenge to the reasonableness of each pre-litigation notice."[26] "To guide the district courts in the exercise of that discretion," the Nevada Supreme Court established in *First Light I* "a 'reasonable threshold test[ ]' [that] every pre-litigation notice must satisfy, but only if challenged by the contractor."[27]

Notices that identify defects in multiple homes present unique challenges. "When multiple homes are believed to contain a common defect, the Legislature intended to allow the owners of those homes to formulate a pre-litigation notice using expert opinion and extrapolation, so long as their notice satisfies the 'reasonable detail' requirement of NRS 40.645(2)."[28] "Extrapolation encompasses the statistical use by an expert witness of a valid and reliable representative sample to formulate an opinion that similarly situated residences and appurtenances may have common constructional defects."[29] The Nevada Supreme Court has

---

[24] *First Light I*, 168 P.3d at 741.

[25] *Id.*

[26] *Id.*

[27] *Id.* at 739.

[28] *Id.* (internal citation omitted). The ability for homeowners to send a common-defect notice under NRS 40.645(3) or (4) was eliminated by the Legislature in AB 125, and that change applies to notices of constructional defects given on or after February 24, 2015, which is the effective date of that Act. *See* 2015 Nevada Laws Ch. 2 (Nevada Assembly Bill No. 125) at Sec. 21(3).

[29] *Id.* at 740.

6

instructed that "[t]he scope of the extrapolated notice must be narrow."[30]  Typically, [h]omes included within the scope of an extrapolated notice . . . will be similarly situated only if they are part of a subset of homes within the development."[31]  The "subset of homes for extrapolation purposes" is largely dependent on the defect and can be limited to "a particular floor plan[,]" "a particular elevation within a particular floor plan[,]" or "homes in which a particular product or type of construction was used."[32]  "In all cases, an extrapolated notice is valid only if it identifies the subset or characteristics of the subset to which it applies."[33]

"In order to achieve the minimum statistical basis that the reasonable threshold requires," the Nevada Supreme Court has suggested "that the district court require claimants' expert to test and verify the existence of the alleged defect in at least one of the homes in each subset of homes included within the scope of the extrapolated notice."[34]  And if the claimants "genuinely believe that every home in the community may have the alleged defect, then [they] should test and verify the defect in at least one home from each subset of homes in the community and extrapolate the percentage of homes within each subset that they believe are likely to contain the defect."[35]  With these principles in mind, I consider the sufficiency of the Association's notice and supplements.

### 1. *Defects identified by Sanders*

The original Chapter 40 notice identifies the subset of homes in the community that are at issue—homes in the Azure Manor/Rancho de Paz community that were constructed by U.S. Home.  After performing destructive testing and visual inspections in five of the ninety-eight U.S. Home-built residences in the Rancho de Paz portion of the community, the Association's

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

architectural expert Sanders opined that "all similarly situated residences within the development have common constructional defects" and that he "believe[s] that the nature and cause of the constructional defects is common to all homes at that project."[36] Sanders prepared a report for each of fifty-four U.S. Home-built Rancho de Paz residences that he inspected, the bulk of which were served on U.S. Home with the Association's second and third supplements. Each report provides the address of the home he inspected, identifies where in the home he located which defects, and includes a photograph of each defect's location.[37] Further, Sanders's reports for the original five homes includes detailed descriptions of the defects, the standards and codes violated, and the proposed repair descriptions.[38]

U.S. Home argues that Sanders's offerings are not a valid and reliable representative sample because this developer constructed homes in the community with five different floor plans that each had two to three different elevations, and the homeowners had multiple options for each floor plan. Plus, U.S. Home used different subcontractors to perform similar scopes of work for different homes throughout the community. U.S. Home also challenges the reports on the basis that Sanders does not explain how he chose the homes he inspected and where to inspect within each home. U.S. Home does not specify, however—as it must under *First Light I*—why any of those points render the Association's notice inadequate for all similarly situated homeowners for the defects identified by Sanders.

The Nevada Supreme Court was clear in *First Light I* that the minimum threshold an extrapolated notice must satisfy is expert testing and verification of "the existence of the alleged defect in at least one of the homes in each subset of homes included within the scope of the extrapolated notice."[39] Only one subset of homes is at issue here—U.S. Home-built residences in

---

[36] ECF 30-3 at 5.

[37] *See* ECF 30-3 at 9–30-4 at 138, 30-6 at 5–30-8 at 102, 30-9 at 7–108.

[38] *See* ECF 30-3 at 9–30-4 at 138.

[39] *First Light I*, 168 P.3d at 740.

the Rancho de Paz portion of the Azure Manor/Rancho de Paz community—and Sanders tested and verified the existence of all but 13 of the 93 alleged defects identified in his expert reports in 54 of the U.S. Home-built residences that he inspected.[40] I find that the Association's notice and supplements on behalf of all similarly situated homeowners in Rancho de Paz were sufficiently detailed and reasonable for 80 of the 93 defects that Sanders identified, and I therefore conclude that the notice reasonably preserved U.S. Home's opportunity to repair those defects. Accordingly, I deny U.S. Home's motion for partial summary judgment to the extent that it challenges the sufficiency of the Association's notice on behalf of all similarly situated homes in Rancho de Paz for the 80 defects actually identified in Sanders's expert reports, but I grant it for the 13 defects that neither I nor U.S. Home could locate in Sanders's reports.[41]

### 2. *Defects identified by Gifford, Kreitenberg, and AGI*

U.S. Home argues that the Association's notice on behalf of all similarly situated homes is not adequate for the defects identified by Gifford, Kreitenberg, and AGI because none of those experts opine that the similarly situated residences may contain the constructional defects identified in their expert reports. Nor do any of those experts opine that the defects they identified are common. I agree.

Chapter 40 requires a properly extrapolated notice to include an opinion by an expert that the "similarly situated residences and appurtenances may have [the] common constructional

---

[40] U.S. Home identified eighteen defects that were in the main body of Sanders's report that accompanied the Association's notice, but were not in any of the individual reports that this expert prepared for each of the five U.S. Home-built residences that were the subject of the notice. *See* ECF 30-10 at 2–13. My review of the individual reports that Sanders prepared for the other forty-nine U.S. Home-built residences that he inspected narrows that number to thirteen. I was unable to locate the following defects, identified by the number ascribed to them by Sanders, in the individual reports that Sanders prepared for the fifty-four U.S. Home-built residences that he inspected: 01.03.050; 01.03.120; 01.05.020; 01.05.030; 01.05.040; 02.03.011; 02.04.010; 03.01.060; 03.01.080; 03.01.150; 03.01.181; 03.01.220; 03.01.230. The Association made no effort to identify where in its expert's individual reports it was noted that these defects exist in the U.S. Home-built residences that he inspected.

[41] *Supra* note 41.

defects" that the expert identified.[42] The expert reports prepared by Gifford, Kreitenberg, and AGI identify the addresses of the homes that they inspected, provide sufficient detail about the location of each defect within those homes, discuss defect causes, and recommend repair solutions. But those experts do not opine that the defects are common or that the similarly situated homes in Rancho de Paz may contain those constructional defects.[43]

The Association attempts to square this circle by arguing that Sanders's opinion that the similarly situated homes have common constructional defects applies to the opinions offered by its other experts. But nothing in Sanders's report indicates that his opinion can be stretched that far. Indeed, he makes no mention of the defects identified by the Association's other experts or even that he has reviewed their reports.[44] The Association provides no evidence to show that Sanders's opinion about commonality applies to any of the other experts' opinions. The Association provided Sanders's curriculum vitae to establish that he is a licensed architect, but that does not demonstrate that he is qualified—or has the personal knowledge necessary—to opine that the defects identified by the Association's other experts may be common to the similarly situated homes.

I therefore find that the Association's notice of the defects identified by Gifford, Kreitenberg, and AGI is sufficiently detailed and reasonable only as to the five U.S. Home-built residences identified in those experts' reports: (a) 6141 Sydney Bay Court, North Las Vegas, Nevada; (b) 6134 Sydney Bay Court, North Las Vegas, Nevada; (c) 2913 Tilten Kilt Avenue, North Las Vegas, Nevada; (d) 6130 Darnley Street, North Las Vegas, Nevada; and (e) 6134 Darnley Street, North Las Vegas, Nevada.[45] Accordingly, I grant U.S. Home's motion for partial summary judgment to the extent that it challenges the sufficiency of the Association's notice for

---

[42] NEV. REV. STAT. § 40.645(4).

[43] *See* ECF 30-4 at 139–30-5 at 68.

[44] *See* ECF 30-3 at 9–30-4 at 138, 30-6 at 5–30-8 at 102, 30-9 at 7–108.

[45] *See* ECF 30-4 at 139–30-5 at 68.

the defects identified by Gifford, Kreitenberg, and AGI on behalf of the other similarly situated homes, and I deny it to the extent that it challenges the sufficiency of the Association's notice on behalf of the homes to which those experts' opinions apply.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that **US Home's motion for partial summary judgment [ECF 30] is GRANTED in part and DENIED in part** consistent with this order. The Association's Chapter 40 notice is sufficient for:

- The first five original homes (6141 Sydney Bay Court, North Las Vegas, Nevada; 6134 Sydney Bay Court, North Las Vegas, Nevada; 2913 Tilted Kilt Avenue, North Las Vegas, Nevada; 6130 Darnley Street, North Las Vegas, Nevada; and 6134 Darnley Street, North Las Vegas, Nevada) as (1) to all defects identified in Gifford's, Kreitenberg's and AGI's reports *plus* (2) the 80 defects identified in Sanders's reports (i.e., all defects he identifies other than 01.03.050, 01.03.120, 01.05.020, 01.05.030, 01.05.040, 02.03.011, 02.04.010, 03.01.060, 03.01.080, 03.01.150, 03.01.181, 03.01.220, and 03.01.230); and

- The remaining 93 homes as to the 80 defects identified in Sanders's reports only.

It is otherwise insufficient.

DATED: March 31, 2016

_____
Jennifer A. Dorsey
United States District Judge